**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORLANDA PRADD,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Civil No.   15-cv-1610 BAS (BGS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANT DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 15 and 19.]** |

## I. INTRODUCTION

On July 20, 2015, Orlanda Pradd ("Plaintiff") filed a complaint pursuant to the Social Security Act ("Act"), 42 U.S.C. section 405(g), challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of disability benefits. (ECF. No. 1.) On December 1, 2015, the Commissioner filed an answer. (ECF No. 9.) After receiving an extension of time, Plaintiff filed a motion for summary judgment on February 29, 2016, requesting reversal of the Administrative Law Judge's ("ALJ") final decision. (ECF No. 15.)  Plaintiff seeks reversal and/or remand alleging: (1) the ALJ's rejection of two treating physicians was legally

insufficient and unsupported by the record; and (2) the ALJ erred by assigning greater weight to the consultative examiner's opinions than to the treating physicians.  (ECF. No. 15 at p. 2.)  After receiving an extension, the Commissioner filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion on April 22, 2016. (ECF No. 19-20.) Plaintiff filed neither a reply to the Commissioner's opposition, nor an opposition to the Commissioner's motion for summary judgment.

Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument. After careful consideration of the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that the Commissioner's cross-motion for summary judgment be **GRANTED**.

## II.  BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 1, 2011 alleging disability beginning on September 17, 2010. (Administrative Record ("AR") 166-69; 177-82.)  The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 107-10; 118-24.) Thereafter, Plaintiff requested a hearing before an ALJ. (AR 125-27.)

The Plaintiff appeared and testified at a hearing before ALJ Mason Harrell, Jr., on December 5, 2013, represented by her attorney Dan Richard Cohen, Esq.  (AR at 12.) Corinne J. Porter, an impartial vocational expert, also appeared and testified. (*Id*.)  In a decision dated December 20, 2013, the ALJ found that Plaintiff was not disabled as defined by the Act because she could perform other work that existed in significant numbers in the national economy. (AR 23.) When the Appeals Council declined to review the ALJ's decision on May 26, 2015, the ALJ's decision became the Commissioner's final decision. (AR 1-6.) Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. section 405(g).

///

///

**A.      Relevant Medical Evidence**

**1.  Treating Physician - Dr. Calvin Yang - (Ex. 2F)**

On January 17, 2012, Plaintiff presented for an appointment with Calvin Yang, MD, PhD, of UCSD Outpatient Psychiatric Services.  Dr. Yang's progress note from January 17, 2012, reported the results of Plaintiff's mental status exam as: Obese female, tearful through whole visit, extremely depressed/angry, labile affect, organized TP [thought process], no SI [suicidal ideation] / HI [homicidal ideation] / AVH [auditory verbal hallucinations]. I/J [insight, judgment] are limited." (AR 304.) In the assessment/plan section of the January 17th progress note, Dr. Yang also wrote: "Patient with maj[or] depression, severe, complicated grief with depression due to psychosocial stressors: losing unemployment, problems with finances and housing. Currently depression improving after introduction of celexa.  She is actually doing much better now."  (AR 304)

Three weeks later, on February 6, 2012, Dr. Yang completed a psychiatric review form concerning Plaintiff's impairments.  In the form, Dr. Yang opined that Plaintiff had "Major Depressive Disorder, Single Episode, Severe Without Psychotic Features and Bereavement."  Dr. Yang noted that:

> "Since her sister passed away, patient's grief has not resolved.  She has been severely depressed.  She isolates in her room.  She is afraid to go outside, afraid to use the bus or to go to social functions because she dreads if people ask about her sister.  She feels hopeless and unable to live without her sister.  She feels tired all the time. She eats only one meal a day because of loss of appetite.  She has problems with her sleep.  She has headaches, irritability."

(AR 293-94.)

When prompted on the psychiatric review form to describe clinical findings demonstrating the severity of the patient's mental impairment, Dr. Yang wrote:

> "Patient is tearful during every visit, with poor grooming.  She has psychomotor slowing.  Her responses are delayed.  Her mood is depressed and affect is depressed and angry at times.  She perseverates on the negative and feels hopeless, She wishes she were not alive at times. She has found it difficult to come to appointments at times due to fear of leaving her house."

(AR 294.)

As to treatment, Dr. Yang reported:

"Client has been seen for cognitive behavioral therapy biweekly, and treated with medications including wellbutrin 150 mg bid and celexa 40 mg daily.  She has had some improvement since adding celexa however she has significant psychosocial stressors, including problems with family, sister with kidney failure, lack of income, inability to provide for her food or rent.  She will likely be homeless if she is unable to secure any source of income.  Her ability to perform in a work setting is severely impaired."

(AR 294.)

When prompted on the psychiatric review form to explain his opinion that Plaintiff would have difficulty working, Dr. Yang wrote:

"Base[d] on my interactions with patient, I feel she would have significant difficulty making it to work or maintaining at work due to fear of leaving her home, feelings of shame, and inadequacy.  She is afraid of rejection and her anxiety would interfere with her ability to carry through tasks.  Her concentration and memory are impaired.  She is isolative and would have difficulty interacting with customers or other employees."

(AR 295.)

When prompted to identify additional test or evaluations he would advise to "fully assess" Plaintiff's impairments and limitations, Dr. Yang wrote: "none at this time".  (AR 295.)  Dr. Yang responded "No" to a section in the form which asked if the patient has a medically documented history of chronic organic mental, schizophrenic, or affective disorder of at least two year's duration that has caused more than a minimal limitation of anility to do any basic work activity.  (AR 296.)

**2.  Treating Physician - Dr. Lawrence Malak - Ex. 9F**

On August 6, 2013, Plaintiff presented for an appointment with Lawrence Malak MD, of UCSD Outpatient Psychiatric Services.  Dr. Malak's Individual Progress Note from August 6, 2013, reported the results of Plaintiff's mental status exam as: "Obese woman who is fairly groomed and casually dressed and walks slowly.  Speech is normal and she makes good eye contact. Mood is "depressed" and affect is dysphoric and tearful during interview.  Thought process LLGD [linear,

logical and goal directed"].  Denies SI [suicidal ideation] / HI [homicidal ideation] / AVH [auditory verbal hallucinations] and no evidence of psychosis.  Insight and judgment are fair. She is AOx4 [alert and oriented to (1) person, (2) place, (3) time and (4) situation]." (AR 416.)

One week later, on August 15, 2013, Dr. Malak completed a mental impairment questionnaire form provided to him by the Plaintiff. (AR 379-81.)  On the form, Dr. Malak indicated he diagnosed Plaintiff with major depressive disorder, severe without psychotic features.  He listed the following clinical signs and symptoms in support of the diagnosis as: "low mood, hopelessness, poor sleep, crying episodes, poor energy, guilt and low motivation and poor focus/attention."  Dr. Malak rated as "seriously limited", Plaintiff's ability to remember, understand and carry out short and simple instructions and her ability to exercise appropriate judgment in matters of safety and work procedures.  Dr. Malak rated as "marked" Plaintiff's ability to: (1) remember, understand and carry out more complex and detailed instructions; (2) maintain attention; (3) maintain regular attendance; (4) ability to sustain work activity without the need for additional supervision; (5) ability to perform work tasks without interruption; (6) ability to appropriately interact with supervisors; (7) ability to appropriately interact with co-workers and (8) ability to deal with normal work stressors.  (AR 379-81.)

Dr. Malak's next Individual Progress Note from September 10, 2013, reported the results of Plaintiff's mental status exam as: "Obese woman who is fairly groomed and casually dressed in black athletic pants and yellow shirt and walks slowly. Speech is normal volume, rhythm but somewhat monotone.  She maintains good eye contact although she is tearful at a couple points during the interview.  Mood is "Tired but a little better" and affect is overall dysphoric although less tearful than last visit. Thought process LLGD. Denies SI/ HI/ AVH and no evidence of psychosis.  Insight and judgment are fair.  She is AOx4." (AR 418.)

///

### 3. Consultative Examiner - Dr. Mounuir Soliman - Ex 1F

Plaintiff presented to the QTC Medical Group where she underwent a psychiatric evaluation by psychiatrist Mounuir Soliman, M.D.  In a report dated December 20, 2011, Dr. Soliman summarized Plaintiff's mental status examination as follows: (1) as to attitude and behavior, Plaintiff "was pleasant and cooperative"; (2) as to intellectual functioning and sensorium, Plaintiff "was alert and oriented to person, place and time"; (3) as to abstract thinking, Plaintiff's "thinking was normal"; (4) as to insight and judgment, Plaintiff's "insight was good"; (5) as to affective status, Plaintiff's "mood was depressed.  Affect was congruent....denies current suicidal ideations ...denies current homicidal ideations ... neurovegetative signs and symptoms were significant for decreased concentration and decreased energy"; and (6) as to reality testing, Plaintiff had "no looseness of associations ... no evidence of ideas of reference, thought insertion, thought broadcasting or thought withdrawal ... no evidence of auditory hallucinations or visual hallucinations."  (AR 287-88.)  Dr. Soliman diagnosed Plaintiff with major depression and opined "from a psychiatric standpoint, the claimant is able to understand, carry out, and remember simple and complex instructions... interact with co-workers, supervisors, and the general public... [and] withstand the stress and pressures associated with an eight-hour workday and day-to-day activities." (AR 288.)

### 4. Consultative Examiner - Dr. Alan Berkowitz - Ex. 6F

Plaintiff presented to Valette & Associates where she underwent a psychiatric evaluation by psychiatrist Alan Berkowitz, M.D.  In a report dated October 19, 2012, Dr. Berkowitz summarized Plaintiff's mental status examination as follows: 1) as to attitude and behavior, Plaintiff "was initially quite quiet but as the interview progressed, she became engaging and much less uncomfortable ... Put good effort into the interview... "; (2) as to orientation, attention and memory, Plaintiff "was completely oriented in all spheres"; (3) as to affective status, Plaintiff's mood was "mildly dysphoric"; and (4) as to reality contact, Plaintiff's "thought processes were

well organized and without any evidence of internal stimuli... no thought blocking or speech latency." (AR 312.) Dr. Berkowitz diagnosed Plaintiff with mild major depression. Dr. Berkowitz noted "I believe this woman was somewhat disingenuous during her interview stating she 'does nothing at all.' When I asked her if she was sleeping much of the day, she denied this stating that she just 'stares at the wall'. To that end, I believe that she is capable of functioning at a much higher level than she will admit particularly given how much detail put into the office questionnaire and how well she did on the mental function portion of the interview. Thus I see no functional limitations." (AR 313.)

**B.     Hearing Testimony - *Plaintiff Orlanda Pradd***

At the hearing, Plaintiff testified that she started seeing a psychiatrist for depression after one of her sisters passed away at the end of 2010 or the beginning of 2011. (AR 58.) Plaintiff also testified that she lives with another sister, who is mentally disabled, and helps that sister pay bills, read mail and sometimes go grocery shopping. (AR 60-62.) Plaintiff stated at the hearing that doctors at UCSD were helping her deal with grief, guilt and depression. (AR 63.) She testified that she typically spends her day sitting or watching television. (AR 66.) She has periods of time where, for three to four times in the week, she does not feel like getting out of bed and she sometimes goes two days in a row without showering or eating. (AR 67-68.) Plaintiff stated at the hearing that she has negative thoughts and her mood and emotions fluctuate. (AR 69.) She takes prescription medicines effexor, wellbutrin, risperdal and trazodone as part of her mental health treatment. (AR70.)

**C.     ALJ's Findings**

On December 20, 2013, the ALJ issued his decision denying benefits to Plaintiff. (AR 12-24.) In arriving at his decision, the ALJ evaluated Plaintiff using the five-step sequential evaluation process set forth in the Commissioner's regulations, 20 C.F.R. section 416.920(a), and described below. The ALJ found that the Plaintiff had

1   not engaged in substantial gainful activity since September 17, 2010.  (AR 14.)

2   Accordingly, the ALJ found that Plaintiff satisfied step one. (*Id.*)

3        The ALJ found step two was satisfied because Plaintiff has the following severe

4   impairments: obesity, degenerative joint disease and depression.[1] (*Id.*)

5        At step three, the ALJ found that Plaintiff did not, however, have an impairment

6   or combination of impairments that met or medically equaled one of the listed

7   impairments for depression  under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR

8   15.)  In support of his decision, the ALJ explained his reasoning as to why Plaintiff

9   did not meet the "B" and "C" criteria of listed impairments section 12.04 for

10   depression.  Specifically, the ALJ found Plaintiff did not satisfy the "paragraph B"

11   criteria because Plaintiff only has mild restrictions in activities of daily living;

12   moderate difficulties in maintaining social functioning; moderate difficulties

13   maintaining concentration, persistence, or pace; and no episodes of decompensation of

14   extended duration. (AR 15.)  At least two "marked" limitations or one "marked"

15   limitation and "repeated" episodes of decompensation of an extended duration are

16   required to satisfy "B" criteria.  (AR 15.)

17        Similarly, the ALJ found Plaintiff did not meet the "C" criteria because there

18   was no evidence in the record of: repeated episodes of extended decompensation; a

19   residual disease process that has resulted in such marginal adjustment that even a

20   minimal increase in mental demands or change in environment would cause

21   decompensation; or current history of one-or-more years of inability to function

22   outside of a highly supportive living arrangement. (AR 16.)  Because none of the "C"

23   criteria had been met, the ALJ proceeded to step four.

24        The fourth and fifth steps require the ALJ to determine how the claimant's

25   impairments affect the claimant's ability to perform work. To make this

---

[1] **12.04 *Affective disorders***: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

determination, the ALJ formulates the claimant's RFC. An RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC "is used at step four of the sequential evaluation process to determine whether the individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering his or her age, education, and work experience." Social Security Ruling ("SSR") 96-8p.

The ALJ found that Plaintiff had an RFC to perform "sedentary work ... except the claimant is limited to simple unskilled work at the Specific Vocational Preparation Level 1 or the  Specific Vocational Preparation Level 2; the claimant can be on her feet for 30 minutes at one time; she requires use of a cane to walk, she can be on her feet a total of 2 hours in an 8-hour workday; the claimant cannot bend, stoop, crouch or crawl; she cannot have any interaction with the public; she can have occasional non-intense interaction with co-workers and supervisors; the claimant is precluded from tasks requiring hypervigilance, she cannot perform fast-paced work, such as rapid assembly lines; the claimant cannot perform tasks requiring quick decision making."  (AR 16.)

In compiling the residual functional capacity for Plaintiff, the ALJ discounted opinions from treating sources Calvin Yang, M.D. and Lawrence Malak, M.D. (AR 20-21.)  The ALJ stated that he gave little weight to Dr. Yang's and Dr. Malak's opinions because they: (1) did not provide an explanation for the assessments, did not propose Plaintiff's specific functional limitations or state what Plaintiff could do despite her impairments; (2) did not provide medically acceptable clinical or diagnostic findings as support and instead relied on Plaintiff's subjective complaints; (3) were inconsistent with the objective medical evidence as a whole and (4) were inconsistent with Plaintiff's admitted activities of daily living. (AR 20.)

The ALJ specifically addressed his interpretation of the objective medical evidence, finding:

> "The medical records showed the claimant sought psychiatric treatment for her diagnosed major depressive disorder (Exs. 4F;7F).  The claimant underwent

Group therapy in which the medical records indicated the claimant endorsed depressive symptoms in the context of psychosocial stressors (e.g. unstable housing environment and possible loss of shelter soon) as well as three month anniversary of her sister's death (Exs. 4F, p.1; 7F). The claimant was conservatively treated with medications (e.g. Celexa, Wellbutrin, Trazadone, Ativan, Prozac. Id. It has been noted that the claimant has tolerated her medication well (Ex. 7F, p.17). Her mental status examination was somewhat normal (Exs. 4F; 7F). Although she was given Global Assessment of Functioning ("GAF") score of 45 (Ex.7F, p.15). A progress note, dated September 13, 2011, revealed the claimant was "doing better" but she did [not] read "Feeling Good" as assigned and has not been doing "thought exercises." (Ex. 10F, p. 1)."

(AR 20.)

The ALJ also specifically addressed activities of daily living, finding:

"[T]he claimant admitted to the consultative examiner, Dr. Soliman, that she could cook, clean, shop, do errands, take care of her personal hygiene, take care of her financial responsibilities, drive a car, get along well with her family, friends and neighbors, and focus on her activities of daily living (Ex. 1F, p.3). However, the claimant [made] inconsistent statements to consultative examiner, Dr. Berkowitz, that she does nothing (Ex. 6F, p. 2). She said she stares at walls and does not watch television. She does not talk, do laundry, or cook. These statements are inconsistent with the function reports and her testimony, which weighs against her credibility."

(AR 18.)

In determining the RFC, the ALJ also gave "some weight" to the opinion of consultative psychiatric examiner, Mounir Soliman, M.D., a Board certified neurologist and psychiatrist who interviewed Plaintiff and conducted a mental status examination. Dr. Soliman diagnosed Plaintiff with major depression. (AR 21.) Dr. Soliman opined Plaintiff could: (1) understand, carry out, and remember simple and complex instructions; (2) interact with coworkers, supervisors and the general public; and (3) withstand the stress and pressures in an 8-hour workday. (*Id.,* AR 287-88.) The ALJ, however, gave Plaintiff a more restrictive functional capacity assessment than recommended by Dr. Soliman based on Plaintiff's subjective complaints. (AR 21.)

Similarly, the ALJ gave "some weight" to the opinion of consultative psychiatric examiner, Alan Berkowitz, M.D., a Board certified psychiatrist who interviewed Plaintiff and conducted a mental status examination of Plaintiff.  Dr. Berkowitz diagnosed Plaintiff with mild major depression.  (AR 22.)  Dr. Berkowitz opined that Plaintiff had no mental functional limitations and was overall normal besides exhibiting an initially guarded mannerism. The ALJ again gave Plaintiff a more restrictive functional capacity assessment than recommended by Dr. Berkowitz based on Plaintiff's subjective complaints.  (AR 21-22.)

Based on the ALJ's conclusion that Plaintiff had an RFC to perform sedentary work limited to simple unskilled work at Specific Vocational Preparation Levels 1 or 2, the ALJ found Plaintiff was unable to perform her past relevant work as a telemarketer, which qualifies as a sedentary, semi-skilled job at Specific Vocational Preparation Level 3.  (AR22)  Nevertheless, the ALJ found Plaintiff could perform other jobs that existed in significant numbers in the economy including addresser and document preparer based on the vocational expert's testimony from the December 5, 2013 hearing. (AR 23; 74-75.)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Act.  (AR 24.)

### III. STANDARD OF REVIEW

To qualify for disability benefits under the Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy. 42 U.S.C.A. § 423(d)(1)(A), (2)(A).

**A.      Sequential Evaluation of Impairments**

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently engaging in any substantial gainful activity. If so, the claimant is

not disabled. If not, the evaluation proceeds to step two; (2) Whether the claimant's impairment is severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three; (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments ("listings"). If so, the claimant is disabled. If not, the evaluation proceeds to step four; (4) Whether the claimant is able to do any work she has done in the past. If so, the claimant is not disabled. If not, the evaluation proceeds to step five; (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520, 404.1509; *see also Tackett v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir. 1999). The claimant bears the initial burden of proving disability in steps one through four of the analysis. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989)). If a claimant establishes an inability to carry on past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Id.*

**B.    Judicial Review**

A claimant may seek judicial review of an unfavorable decision of the Commissioner. The district court will not disturb the Commissioner's decision unless it is based on legal error or not supported by substantial evidence. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a scintilla, but less than a preponderance. *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). Substantial evidence is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.* The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995). If the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

The district court may enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## IV. DISCUSSION

### A. Parties' Arguments

Plaintiff argues that: (1) the ALJ's rejection of Plaintiff's two treating physicians was legally insufficient and unsupported by the record; and (2) the ALJ erred by assigning greater weight to the consultative examiner's opinions than to the treating physicians. Specifically, Plaintiff argues that while the ALJ stated the Yang and Malak opinions lacked support, the record actually demonstrates that each physician supported his opinion in the psychiatric review form and mental impairment questionnaire that they completed by providing answers to follow-up questions provided in the forms. Plaintiff contends the forms constitute valid opinion evidence and the ALJ failed to address the factors set forth in the Social Security Regulations to discount them. Plaintiff also argues that because the ALJ only cited to a small number of records in his decision, he could not have reviewed the entire record in this case. Similarly, Plaintiff argues the ALJ's consideration of her daily activities, in order to develop an RFC, was superficial at best. [ECF No. 15 at pp. 5-9.] As for the issue of assigning greater weight to the consultative examiners than to Plaintiff's treaters, Plaintiff contends the ALJ failed to afford the treaters the deference to which they were presumptively entitled and made no effort to explain why the consultative examiners' opinions were entitled to more weight when both the consultative examiners and the treating physicians had equal opportunity to observe Plaintiff's condition in person. [ECF No. 15 at pp. 10-11.]

In response, Defendant contends the ALJ's decision to assign little weight to the opinions of treating physicians, Drs. Yang and Malak was based on several legally valid factors including: (1) Drs. Yang and Malak's opinions were based heavily on Plaintiff's self reports, as opposed to clinical or diagnostic findings; (2) Drs. Yang and Malak's opinions were inconsistent with the medical record as a whole; and (3) Drs. Yang and

Malak were unfamiliar with Plaintiff's admitted activities of daily living. [ECF No. 19-1 at 5.]  As for the ALJ"s assignment of the higher, "some weight" consideration to the opinions of consultative examiners, Drs. Soliman and Berkowitz, Defendant argues the assignment of some weight to their opinions was acceptable because both physicians conducted an in-person assessment and examination of Plaintiff, which in turn constitutes substantial evidence under Ninth Circuit case law.  [ECF No. 19-1 at 6.]

**B.  Assignment of Weight - Standard of Review**

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester,* 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1036 (9th Cir.2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987). Due to this deference, the ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of treating or examining physician. *Lester,* 81 F.3d at 830; *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir.2006). When a treater or examiner is contradicted by another doctor, the opinion of that treating or examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Regennitter v. Comm'r of the Soc. Sec. Admin*., 166 F.3d 1294, 1298–99 (9th Cir.1999).

In this case, the opinions of the consultative examiners - Dr. Soliman and Dr. Berkowitz - which were based on their in-person assessment and mental status

examinations of Plaintiff, conflicted with the opinions of treating physicians Dr. Yang and Dr. Malak on whether Plaintiff was able to work due to her depression. Accordingly, the ALJ needed to provide specific and legitimate reasons in his decision, supported by substantial evidence in the record, to discount the treating physicians' opinions. *Id.* As mentioned in the Judicial Review section *supra*, substantial evidence means more than a scintilla, but less than a preponderance. *Smolen,* 80 F.3d at 1279. It is evidence that a reasonable mind would consider adequate to support a conclusion. *Id.*

### 1 . Dr. Yang's Psychiatric Review Form

The ALJ provided four reasons for giving little weight to the opinion in Dr. Yang's psychiatric review form that Plaintiff could not work. First, the ALJ found the form did not provide an explanation for the opinion, did not propose Plaintiff's specific functional limitations and did not state what Plaintiff could do despite her impairments. It is well-established that an ALJ does not need to give weight to conclusory opinions supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 111, 1113 (9th Cir. 1999) (affirming the ALJ's rejection of a minimally supported treating physician's opinion.)

Plaintiff argues that Dr. Yang's opinion actually did provide an explanation, and upon the Court's review of Dr. Yang's psychiatric review form, there is an explanation as to why Dr. Yang felt it would be difficult for Plaintiff to work at a regular job on a sustained basis. (AR 295.) However, the explanation is brief. Dr. Yang wrote: "Base[d] on my interactions with patient I feel she would have significant difficulty making it to work or maintaining at work due to her fear of leaving her home, feelings of shame, and inadequacy. She is afraid of rejection and her anxiety would interfere with her ability to carry through tasks. Her concentration and memory are impaired. She is isolative and would have difficulty interacting with customers or other employees." (AR 295.) An ALJ may discount treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. *See e.g. Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001).[2]  In addition, the functional limitations that were identified by Dr. Yang on the form were compiled as a checklist, which also provides a legitimate basis for discounting a treating physician's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding an ALJ's decision discounting the treating physician's view because it was in the form of a checklist, did not have supportive objective evidence and was based on Plaintiff's subjective descriptions of pain.)[3]  Finally, the Court's review of Dr. Yang's form revealed that the form did <u>not</u> state what Plaintiff could do despite her impairments, just as the ALJ described.  *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (explaining that if the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld.)     It is also important to note that the issue of Plaintiff's ability to work is reserved to the Commissioner of Social Security and Dr. Yang's opinion on that issue is not entitled to special weight. Specifically, under the Code of Regulations for the Social Security Administration, the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and **"will not give any special significance" to a statement that the claimant is "unable to work" -** which is the opinion made in Dr. Yang's form.  *See* 20 C.F.R. § 416.927(d)(1)-(3)[4]; *see also  McLeod v. Astrue,* 640

---

[2]  The Court discusses inconsistency with the record at pp. 18-19 below as it is the ALJ's third stated reason for discounting Dr. Yang's opinion.

[3]  The Court discusses reliance on subjective complaints at pp. 17-18 below as it is the ALJ's second stated reason for discounting Dr. Yang's opinion.

[4]  20 C.F.R. § 416.927(d) - Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

(1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

(2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether

F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability.")  Thus, **IT IS RECOMMENDED** the Court find the ALJ did not err in assigning little weight to Dr. Yang's opinion.

The second reason the ALJ listed for giving little weight to Dr. Yang's opinion was that Dr. Yang primarily summarized the Plaintiff's subjective complaints as opposed to citing medically acceptable clinical findings in support. The Ninth Circuit has explained that rejection of a treating physician's opinion constitutes a specific and legitimate reason when the opinion is premised on a claimant's own subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  Given this standard, the Court has reviewed Dr. Yang's psychiatric review form.  The form includes a section that specifically asks the practitioner to "[i]dentify additional tests or evaluations you would advise to fully assess your Plaintiff's impairments and limitations."  Dr. Yang responded "none at this time" to that inquiry. (AR 295.)  The Court notes that although Dr. Yang failed to identify additional clinical tests or evaluations on the form, he did list Plaintiff's Global Assessment of Functioning ("GAF") score on the form.  However, the ALJ explained in his decision that he found the GAF scores were "of limited evidentiary value [because] they reveal only snapshots of impaired and improved behavior ... [t]he GAF score (as a method of evaluating the severity of impairments) has been specifically rejected by the Social Security Administration."  (AR 20.)  Indeed, in its Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, the Social Security Administration states:

"The GAF scale ... is the scale used in the multiaxial evaluation system endorsed

---

your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity (see §§ 416.945 and 416.946), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.
(3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.

20 C.F.R. 416.927(d)(3).

by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."

65 Fed. Reg. 50746-01, 2001 WL 117632, (Aug. 21, 2000).

In addition, the Court has reviewed the record as a whole and the majority of mental status examination results provided in the medical record rated Plaintiff's insight and judgment as adequate, normal or fair, which supports the ALJ's interpretation of the form as mainly reporting subjective complaints as opposed to clinical results.  (AR 329, 331, 333, 335, 337, 339, 346, 387, 389, 391, 393, 394, 399, 401, 404, 405, 407, 409, 411.) Thus, **IT IS RECOMMENDED** that the Court find the ALJ's second reason for assigning Dr. Yang's opinion little weight - that the opinion was based primarily on Plaintiff's subjective complaints as opposed to acceptable clinical findings - constitutes a specific and legitimate basis for assigning lesser weight to Dr. Yang's opinion that Plaintiff was unable to work.

The third reason the ALJ cited for giving little weight to Dr. Yang's opinion was inconsistency with the objective medical evidence.  Inconsistency is a specific and legitimate reason for assigning a treating physician's opinion less weight.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  Inconsistency is also one of the factors the ALJ is instructed to consider under Title 20 of the Code of Federal Regulations in determining what weight to accord the opinion of the treating physician. 20 C.F.R. 404.1527(c)(4).  Specifically, the ALJ cited evidence from the medical record in his decision that was contrary to Dr. Yang's opinion showing: (1) psychosocial stressors that provided context for Plaintiff's depressive symptoms; (2) well-tolerated and conservative medications[5] (3) mental status that was "somewhat normal" [although as explained above, the ALJ gave accompanying GAF scores limited evidentiary value]; and (4) improvement in Plaintiff's condition.  (AR 20.)  The Court's review of the record supports the ALJ's

---

[5] An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions.  *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician where physician had prescribed conservative treatment and plaintiff's activities were inconsistent with the physician's disability assessment).

determination.  For example, on January 17, 2012, Dr. Yang wrote in a progress note: "Currently depression improving after introduction of celexa.  She is actually doing much better now." (AR 386.)  In an April 16, 2012 progress note, Dr. Yang wrote:

> "Patient is doing better but she had altercation with ex-boyfriend...We examined cognitive ways in which she could intervene and change her mood as we as behavioral techniques she could use." (AR 387.)

A May 14, 2012 progress note of Dr. Yang's stated:

> "She is tolerating her medications well, and feels they do help however recent stressors have been very difficult for her ... Patient is working on CBT techniques and thought record.  Her mood was improved with medications but recent events have made her more depressed.  She is able to rally her coping skills though." (AR389.)

On May 29, 2016 Dr. Yang similarly wrote in a progress note that:

> [Plaintiff] has not been doing the thought record and I reinforced the importance of it to improving her mood.  Her medications have been helpful and she reports fair mood despite all the stressors she is going through." (AR 391.)

On August 29, 2012, Dr. Yang wrote in a progress note:

> "Moderate depression exacerbated by anniversary of her sister's death.  But she is handling it better this year." (AR 395.)

On September 12, 2012, Dr. Yang wrote:

> "Patient doing much better since last saw her.  She says she has more good days than bad. ....  moderate improvement since last seen ... continues to improve, currently left with some irritability/distractibility/poor concentration and some insomnia. Possibly above is a medication side effect." (AR 397.)

Because there is medical evidence in the record that a reasonable mind would consider adequate to support the ALJ's determination, **IT IS RECOMMENDED** the Court find the ALJ did not err in assigning little weight to Dr. Yang's opinion due to inconsistency with the overall record.

The fourth and final reason the ALJ listed for discounting Dr. Yang's opinion that Plaintiff could not work was its inconsistency with Plaintiff's admitted activities of daily living. As explained above, inconsistency is a specific and legitimate reason for assigning a treating physician's opinion less weight. *Magallanes*, 881 F.2d at 751.  Inconsistency is also one of the factors the ALJ considers in determining what weight to accord the

opinion of the treating physician.  20 C.F.R. 404.1527(c)(4).   The ALJ explained in his decision that "some of the physical and mental abilities and social interactions required to perform these activities are as the as those necessary for obtaining and maintaining employment."   (AR 18.)   Specifically, the ALJ cited in his decision to Plaintiff's testimony that "she pays the bills for her sister, who is mentally disabled, reads the mail, shops for groceries, watches television, sits around the house and attends church."  (AR 17.)  The ALJ also cited to Plaintiff's adult function report, in which Plaintiff indicated that she can "take her medications, maintain her personal care, eat, watch television, prepare her own meals, do laundry, clean, ride in a car, drive, shop in stores for groceries, manage her finances, spend time with others, and attend church." (AR17-18; 214-221.) Finally, the ALJ cited to Plaintiff's admission to consultative examiner, Dr. Souliman that she could "cook, clean, shop, do errands, take care of her personal hygiene, take care of her financial responsibilities, drive a car, get along well with her family and friends and neighbors, and focus on her activities of daily living." (AR 18, 287.)  Given this evidence in the record, which a reasonable mind would consider adequate to support the ALJ's determination, **IT IS RECOMMENDED** the Court find the ALJ did not err in assigning little weight to Dr. Yang's opinion that Plaintiff was unable to work due to its inconsistency with Plaintiff's daily activities. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (explaining an ALJ may discount a physician's opinion that is contradicted by a claimant's own admitted abilities.)

### 2. Dr. Malak's Mental Impairment Questionnaire

On the Mental Impairment Questionnaire, Dr. Malak rated as "seriously limited", Plaintiff's ability to remember, understand and carry out short and simple instructions and her ability to exercise appropriate judgment in matters of safety and work procedures. On the questionnaire, Dr. Malak rated as "marked" Plaintiff's ability to: (1) remember, understand and carry out more complex and detailed instructions; (2) maintain attention; (3) maintain regular attendance; (4) ability to sustain work activity without the need for additional supervision; (5) ability to perform work tasks without interruption; (6) ability to appropriately interact with supervisors; (7) ability to appropriately interact with co-

workers and (8) ability to deal with normal work stressors.  (AR 379-81.)

The ALJ discounted Dr. Malak's opinions based on the same four reasons given to discount Dr. Yang's psychiatric review form.  As discussed above, those four reasons were: (1) failure to provide an explanation, propose Plaintiff's specific functional limitations or state what Plaintiff could do despite impairments; (2) failure to provide medically acceptable clinical findings and primary reliance on Plaintiff's subjective complaints; (3) inconsistency with objective medical evidence as a whole; and (4) inconsistency with Plaintiff's daily activities. (AR 20.)

The Court has reviewed the Mental Impairment Questionnaire.  (AR 379-381.)  As to the ALJ's first reason for discounting the questionnaire - that it is essentially conclusory - the Court's review confirmed that there are very brief explanations after each assessment on the form, but as the ALJ noted, the form does <u>not</u> state what Plaintiff could do despite her impairments.  An ALJ does not need to give weight to conclusory opinions supported by minimal clinical findings.  *Meanel,* 172 F.3d at 1113.

The second reason the ALJ listed for giving little weight to Dr. Malak's form was reliance on subjective complaints instead of medically acceptable clinical findings.  Again, the Court's review revealed there were no clinical findings cited in Dr. Malak's form.  An ALJ has stated a specific and legitimate reason for discounting a treating physician's opinion when it is based primarily on subjective complaints.  *Fair*, 885 F.2d at 605.

The ALJ's third and fourth reasons for discounting Dr. Malak's opinion that Plaintiff has limited or marked impairments were inconsistency with both the medical record as a whole and with plaintiff's admitted daily activities.  Inconsistency is a specific and legitimate reason for assigning a treating physician's opinion less weight.  *Magallanes*, 881 F.2d at 751.  Inconsistency is also one of the factors the ALJ considers in determining what weight to accord the opinion of the treating physician.  20 C.F.R. 404.1527(c)(4).  As the Court discussed in Section IV(B)(1) above with  respect to its review of the evidence as whole, there is evidence in the medical record of well-tolerated, conservative medications; "somewhat normal" mental status and improvement in

Plaintiff's condition as the ALJ noted.  (AR 20.)  Specifically, Dr. Malak's treatment notes reflect this interpretation of the ALJ.  For example, on August 6, 2013, Dr. Malak wrote:

> "She feels some of the medications have helped but minimally and feels the Celexa makes her feel 'Duh' or slow.  She would like to consolidate her WBT and try a different medication to better help her depression.  She denies any SI or HI and is optimistic that she can get better eventually." (AR 416.)

Similarly, the results of Plaintiff's mental status exam from the August 6th appointment indicate:

> "Obese woman who is fairly groomed and casually dressed and walks slowly. Speech is normal and she makes good eye contact. Mood is "depressed" and affect is dysphoric and tearful during interview.  Thought process LLGD [linear, logical and goal directed"].  Denies SI [suicidal ideation] / HI [homicidal ideation] / AVH [auditory verbal hallucinations] and no evidence of psychosis.  Insight and judgment are fair. She is AOx4 [alert and oriented to (1) person, (2) place, (3) time and (4) situation]." (AR 416.)

One month later, Dr. Malak's progress note from September 10, 2013 indicates:

> "Patient initially comes in saying she feels 'ok today' and that she still is depressed.  She goes on to report feeling less cognitive dulling since stopping the Celexa and has more days with less tearfulness than she did a couple months ago. She still has bad days and low energy but no side effects from Effexor." (AR 418.)

The results of Plaintiff's mental status exam from the September 10th appointment state:

> "Obese woman who is fairly groomed and casually dressed... Speech is normal volume, rhythm but somewhat monotone. She maintains good eye contact although she is tearful at a couple points during interview.  Mood is 'Tired but a little better' and affect is overall dysphoric although less tearful than last visit. Thought process LLGD. Denies SI/HI/AVH and no evidence of psychosis.  Insight and judgment are fair. She is AOx4." (AR 418.)

Accordingly, there is evidence in the overall record that a reasonable mind would consider adequate to support the ALJ's conclusion. *Smolen,* 80 F.3d at 1279. Furthermore, if the evidence is subject to more than one rational interpretation, the ALJ's conclusion must be upheld.   *Burch,* 400 F.3d at 679. **IT IS THEREFORE RECOMMENDED** that the Court find the ALJ did not err in assigning little weight to Dr. Malak's mental impairment questionnaire.

### 3.  Consultative Examiners - Dr. Mounuir Soliman and Dr. Alan Berkowitz

The ALJ assigned "some weight" to consultative examiner Mounir Soliman's

opinion that Plaintiff could: (1) understand, carry out, and remember simple and complex instructions; (2) interact with coworkers, supervisors and the general public; and (3) withstand the stress and pressures in an 8-hour workday.  (*Id.*, AR 287-88.)  However, the ALJ gave a more restrictive residual functional capacity than opined by Dr. Soliman in light of Plaintiff's subjective complaints.  (AR 21.)

The ALJ also assigned "some weight" to consultative examiner Alan Berkowitz's opinion that Plaintiff had "no functional limitations." (AR 313.)  The ALJ again gave a more restrictive residual functional capacity than opined by Dr. Berkowitz in light of Plaintiff's subjective complaints.  (AR 21-22.)

Important to the ALJ's decision to assign some weight to these examining physician opinions was his observation that despite diagnosing Plaintiff's depression, both psychiatrists found Plaintiff to be "overall normal" after conducting mental status examinations and after interviewing and observing Plaintiff.  (AR 21.)   The ALJ's observation of a history of normal mental status examinations also aligns with the bulk of the mental status examination results documented in the medical record, which generally rated Plaintiff's insight and judgment as adequate, normal or fair. (AR 329, 331, 333,335, 337, 339, 346, 387, 389, 391, 393, 394, 399, 401, 404, 405, 407, 409, 411.)[6] These opinions therefore constitute substantial evidence properly considered by the ALJ.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (explaining that an examining opinion can amount to substantial evidence, as long as there is other evidence in the record to support it.)  The Court also notes that by according only "some weight"

_____

[6] The ALJ also noted the GAF scores of Dr. Soliman and Dr. Berkowitz, which conflicted with the GAF assigned by Dr. Yang.  Dr. Soliman assigned a GAF score of 66, which indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning) ... but generally functioning pretty well, has some meaningful relationships."  Dr. Berkowitz assigned a GAF score of range of 55-60, which indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers.)"  Dr. Yang assigned Plaintiff a GAF score of 45, which indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job.)" (AR 20-21.)  An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may also constitute substantial evidence.  *Orn v. Astrue*, 495 F.3d 625, 632 (2007) (explaining independent clinical findings can be diagnoses that differ from those offered by another physician and that are supported by substantial evidence).

to the consultative examiners' opinions, the ALJ also discounted these opinions in order to give credit to Plaintiff's subjective complaints when formulating the residual functional capacity assessment.[7]   When the evidence reasonably supports the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).  **IT IS THEREFORE RECOMMENDED** that the Court find the weight the ALJ assigned to the examining physician opinions in this case was articulated with specific, legitimate reasoning and supported by substantial evidence.

### V. CONCLUSION

Having reviewed the matter, the undersigned Magistrate Judge recommends Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED.**   This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. section 636(b)(1).

**IT IS ORDERED** that no later than **<u>July 29, 2016</u>**, any party to this action may file written objections with the Court and serve a copy to all parties.  The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///
///
///
//

---

[7] The ALJ found Plaintiff's subjective complaints were not fully credible based on some non-compliance with therapy that was documented in the record. (AR 20; 382.) The ALJ wrote: "This [non-compliance] demonstrates a possible unwillingness to do what is necessary to improve her condition. It may also be an indication that the claimant's symptoms were not as severe as the claimant purported. This evidence of noncompliance undermines the credibility of the claimant's subjective complaints and alleged disability.  Although the failure to follow prescribed treatment without a good reason can be the basis for finding that a claimant is not disabled, the undersigned considered it as a credibility factor in this case and does not base the ultimate decision in this case on this factor alone." (AR 19-20, fn.4)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 12, 2016**.

**IT IS SO ORDERED**.

DATED:  July 15, 2016

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court